UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Peter Parnell, *et al.*,

            Plaintiffs,

      v.

School Board of Lake County, Florida,
*et al.*,

           Defendants.

Case No. 4:23-cv-414-AW-MAF

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Date:  September 22, 2023

Anna T. Neill (FBN 100945)
William J. Blechman (FBN 379281)
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Tel: 305-373-1000
atn@knpa.com
wjb@knpa.com

Faith E. Gay (FBN 129593)
Lauren J. Zimmerman*
Max H. Siegel*
Masha Simonova*
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
lzimmerman@selendygay.com
msiegel@selendygay.com
msimonova@selendygay.com

*Counsel for Plaintiffs*

*(application for admission *pro hac vice*
forthcoming)

# **TABLE OF CONTENTS**

**Pages**

I.    The Escambia County Defendants Discriminated Based on Viewpoint.........1

II.   The Escambia County Defendants Violated B.G.'s Right to Receive Information ....................................................................................................3

III.  The Escambia County Defendants' Actions Are Not Government Speech............................................................................................................4

    A.   Defendants Ignore, and Fail, the Supreme Court's Factors for Government Speech ........................................................................6

        1.   History.............................................................................6

        2.   Endorsement....................................................................7

        3.   Control ............................................................................8

    B.   Defendants' Arguments About Government Speech Fail....................9

IV.   The Author Plaintiffs Have Standing ...............................................11

V.    Student Plaintiff B.G. Has Standing.................................................12

VI.   The Complaint Is Not a Shotgun Pleading ......................................13

VII.  Plaintiffs' Claims Against Superintendent Leonard Are Proper.................13

VIII. Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction ..............................................................................................14

IX.   The Public Interest Favors a Preliminary Injunction....................15

CONCLUSION ...........................................................................15

This case challenges the removal of *And Tango Makes Three* ("*Tango*")—an acclaimed children's book about penguins in the Central Park Zoo—from Escambia County public school libraries, the restriction of access to *Tango* in Lake County public school libraries, and the unconstitutional statute under which the book was removed and restricted—all involving unconstitutional viewpoint discrimination. This motion seeks a preliminary injunction restoring *Tango* to shelves in Escambia County because the Lake County Defendants restored the book during the pendency of a previous motion. The State Defendants filed an unauthorized brief in opposition to this motion, to which they are not a party, but Plaintiffs respond to that brief too.

## I.   The Escambia County Defendants Discriminated Based on Viewpoint

The Escambia County Defendants' claim (at 15–17) that they did not discriminate based on viewpoint is belied by the factual record and the law. Their after-the-fact citation (at 17) to a statute on library materials as the reason for the removal shows the lack of any record of legitimate reasons for removing the book. Their assertion (at 16) that "the Board's decision undeniably included pedagogical concerns about the ability of students to comprehend the material in *Tango*" tellingly does not cite a specific portion of the School Board meeting on *Tango* or a legitimate pedagogical reason. This claim conflicts with Simon & Schuster's promotion of the book as appropriate for K–3 students, and the Lake County school library's statement that the book is appropriate for ages 5–8. If Defendants are referring to the

statements that "[v]ery young students may not understand the word 'male'" and "if [young students] do [understand the word 'male'] they may be confused as to why 2 male penguins are sitting on an egg," FAC ¶ 95, then their argument is pretextual.

"Of course, the government rarely flatly admits it is engaging in viewpoint discrimination. In lieu of such evidence, plaintiffs may demonstrate viewpoint discrimination based on a pattern of enforcement that evinces a governmental policy or custom of intentional discrimination on the basis of viewpoint or content." *Zukerman v. U.S. Postal Serv.*, 567 F. Supp. 3d 161, 174 (D.D.C. 2021) (cleaned up). Such evidence is readily found in (1) a decisive member of the School Board's comment that *Tango* should be removed because "[t]he fascination is still on that it's two male penguins raising a chick," ECF No. 93, at 11:8–9, (2) the removal of two other books with LGBTQ+ characters the same night as *Tango*, Gay Decl., Ex. B, at 5–9, (3) the challenge form that prompted the removal of *Tango*, referencing an "LGBTQ agenda using penguins," Gay Decl., Ex. C, at 15, (4) the conclusion of eight Library Advisory Councils and the District Materials Review Committee that *Tango* was pedagogically valuable, accurate, and age-appropriate, FAC, Ex. D, at 41–62, (5) the pretextual reasons (or lack of any reasons) provided by the three Library Advisory Councils that reached a contrary conclusion, *id.*, and (6) the Escambia County Defendants' removal at other times of numerous books with messages of tolerance for LGBTQ+ individuals. FAC ¶ 81.

2

As to whether the Escambia County Defendants applied H.B. 1557, their citation (at 17) to a different statute on library materials is no help. The record before the Board did not show that *Tango* was "not suited to student needs and their ability to comprehend the material presented" or "inappropriate for the grade level and age group for which the material is used." Fla. Stat. § 1006.28(2)(a). Although statements by non-Board members may not be dispositive of the Board's motivations, they are persuasive evidence when the Escambia County Defendants are unlikely to admit their true motives. *See Zukerman*, 567 F. Supp. 3d at 174. Those statements include the challenge form for *Tango*, which cited H.B. 1557, as well as the School Board's records, which described H.B. 1557 as a "Relevant Florida State Statute[.]" Gay Decl., Ex. C, at 1. Even absent reliance on H.B. 1557, Plaintiffs would still be entitled to relief based on viewpoint discrimination.[1]

## II. The Escambia County Defendants Violated B.G.'s Right to Receive Information

Notably, the Escambia County Defendants do not claim that they did not violate B.G.'s right to receive information. Rather, relying on *ACLU of Florida v. Miami-Dade County School Board*, 557 F.3d 1177 (11th Cir. 2009), they claim (at 19–20) that this right is not recognized by the Supreme Court or the Eleventh

---

[1] The contention (at 20–21) that H.B. 1557 is not vague or overbroad overlooks that viewpoint discrimination is an independent basis for relief. The present motion does not seek to enjoin enforcement of H.B. 1557 based on vagueness or overbreadth.

3

Circuit because the plurality opinion in *Board of Education v. Pico*, 457 U.S. 853 (1982), is not binding precedent. But *ACLU* held only that *Pico*'s standard for book removals—which prohibits viewpoint discrimination—was not precedential. 557 F.3d at 1200. *ACLU* did not say that there is no right to receive information at all.[2]

The Supreme Court has repeatedly held that "the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). The Eleventh Circuit recently reiterated that "[t]he First Amendment protects the right to receive information, including the 'right to some level of access to a public library.'" *In re Watkins*, 2023 WL 5664171, at *2 (11th Cir. Sept. 1, 2023); *see also Daker v. Chief Legal Affs. Officer*, 2023 WL 2317908, at *4 (11th Cir. Mar. 2, 2023) ("[T]he First Amendment protects the right to receive information and ideas." (cleaned up)). And courts within this circuit have repeatedly upheld this right. *See, e.g.*, *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1244 n.19 (N.D. Fla. 2022); *see also* ECF No. 51 at 12–14.

## III.   The Escambia County Defendants' Actions Are Not Government Speech

The Escambia County Defendants (at 18–19) and State Defendants (at 2–6)

---

[2] Indeed, the Fifth Circuit limited the case *ACLU* invoked, *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033 (5th Cir. 1982), stating, "We disagree with the School Board's contention that we are bound to reject the guidance found in *Pico* because of our *en banc* opinion in *Muir*." *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995)

contend that curating a school library is government speech. Not so. The government speech doctrine "is susceptible to dangerous misuse," *Matal v. Tam*, 582 U.S. 218, 235 (2017), and in deciding whether to deem an activity government speech, a court should "not do so lightly." *Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070, 1074 (11th Cir. 2015). Scores of cases have rejected Defendants' position that libraries are a Constitution-free zone.[3] If Defendants are right, then seven Justices were wrong in *Pico*, where the plurality and Justice Rehnquist's dissent (joined by two other Justices) prohibited removal of school library books for "narrowly partisan

---

[3] *See, e.g.*, *Campbell*, 64 F.3d at 188-89 (rejecting position that school officials have "absolute discretion to remove books from their school libraries"); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976) (school boards may not remove books based "solely [on] the social or political tastes of school board members"); *Fayetteville Pub. Libr. v. Crawford County*, 2023 WL 4845636, at *60 (W.D. Ark. July 29, 2023) (rejecting argument that "state may censor non-obscene materials in a public library because such censorship is a form of government speech"); *Little v. Llano County*, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023) (government's discretion over public libraries is not absolute); *Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton R-III School District*, 853 F. Supp. 2d 888, 899 (W.D. Mo. 2012) ("*PFLAG*") (First Amendment bars viewpoint discrimination in determining materials in school libraries); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004 (W.D. Ark. 2003) (school board members' "personal distaste" for content is an unconstitutional basis for restricting access); *Gay Guardian Newspaper v. Ohoopee*, 235 F. Supp. 2d 1362, 1373 (S.D. Ga. 2002) (decisions to exclude materials from a public library do not involve "government speech"); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547–48 (N.D. Tex. 2000) (officials "may not remove books from school library shelves simply because they dislike the ideas contained in those books"); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 874–75 (D. Kan. 1995) (First Amendment imposes constraints on a school board's removal of library books).

or political" reasons. 457 U.S. at 870 (plurality opinion), 907 (Rehnquist, J., dissenting).

### A.    Defendants Ignore, and Fail, the Supreme Court's Factors for Government Speech

The Supreme Court examines three factors in evaluating a claim of government speech: "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589–90 (2022). Defendants ignore, and fail, each factor.

### 1.    History

"The first factor—history—directs us to ask whether the type of speech under scrutiny has traditionally 'communicated messages' on behalf of the government." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1230 (11th Cir. 2019) (quoting *Walker v. Tex. Div., Sons of Confederate Veterans*, 576 U.S. 200, 211 (2015)). Books in public school libraries have not historically been used to speak the government's message. Unlike a license plate issued by a state or a flagpole at a government building, a school library has traditionally been a place for a student "to test or expand upon ideas presented to him, in or out of the classroom." *Pico*, 457 U.S. at 869; *see also Chiras v. Miller*, 432 F.3d 606, 619 (5th Cir. 2005) (contrasting "the removal of an optional book from the school library," which is not government speech, with "the selection of a textbook for use in the

classroom"). The American Library Association thus maintains that "[t]he school library plays a unique role in promoting, protecting, and educating about intellectual freedom," which requires "access to resources and services free of constraints resulting from personal, partisan, or doctrinal disapproval." *Access to Resources and Services in the School Library*, Am. Libr. Ass'n, https://tinyurl.com/tnhw8k5m.

### 2.   Endorsement

The second factor is "whether observers reasonably believe the government has endorsed the message." *Leake v. Drinkard*, 14 F.4th 1241, 1248 (11th Cir. 2021) (cleaned up). Unlike "a person who displays a message on a [state] license plate," an author of a book in a public school library does not "intend[] to convey to the public that the State has endorsed that message." *Walker*, 576 U.S. at 212. If the contents of school libraries were government speech, the government would be "babbling prodigiously and incoherently," by "expressing contradictory views." *Matal*, 582 U.S. at 236; *see also Shurtleff*, 142 S. Ct. at 1601 (Alito, J., concurring) (flags flown from city flagpole were not government speech because they "reflected a dizzying and contradictory array of perspectives that cannot be understood to express the message of a single speaker"). By way of example, Escambia County public school libraries include both Karl Marx's *Das Kapital* and Adam Smith's *The Wealth of Nations*. The varied views in libraries are fatal to Defendants' government speech argument.

Government speech includes only speech that an observer would reasonably believe bears the "imprimatur" of the school, *Mech*, 806 F.3d at 1075, which covers only activities "that may fairly be characterized as part of the school curriculum," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (activities that bear the "imprimatur" of the school "are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences"). School libraries do not impart particular knowledge but rather expose students to an optional and diverse array of viewpoints not included in the mandatory classroom curriculum.

### 3.    Control

The third factor "asks whether the government 'maintains direct control over the messages conveyed' through the speech in question," here, the content of library books. *McGriff v. City of Miami Beach*, 594 F. Supp. 3d 1302, 1310 (S.D. Fla. 2022) (quoting *Walker*, 576 U.S. at 213). The government's ability to "edit" the speech, such as books, is central. *Leake*, 14 F.4th at 1250–51 (city's requirement of detailed descriptions and its "final approval authority" over parade participants showed control). Schools cannot edit books in their libraries, despite controlling which books to include. Public school library books are like registered trademarks: The government registers trademarks, but they are not government speech, as the government "does not dream up these marks, and it does not edit marks submitted for registration," *Matal*, 582 U.S. at 235. Schools likewise select books but do not create or edit them.

### B.     Defendants' Arguments About Government Speech Fail

The Escambia County Defendants sole citation (at 18) to Eleventh Circuit precedent on school libraries supports Plaintiffs. *ACLU* noted that "in the case of a public library … there is still government speech," but just a sentence later, instructed that "[t]he government's ability to limit speech in a nonpublic forum, however, is not unlimited. The government can restrict access to the nonpublic forum as long as the restrictions … are not an effort to suppress expression merely because public officials oppose the speaker's view." 557 F.3d at 1202 (cleaned up).[4]

The State Defendants' comparisons to readily distinguishable cases are also unavailing. *People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23 (D.C. Cir. 2005), was decided prior to the Supreme Court's guidance on the factors in government speech analysis. And unlike *Gundy v. City of Jacksonville*, 50 F.4th 60 (11th Cir. 2022), the government speech analysis for school libraries does not implicate the special circumstance of legislative prayer, which is uniquely "embedded in the history and tradition of this country," *id.* at 72 (quoting *Marsh v. Chambers*, 463 U.S. 783, 786 (1983)). Finally, unlike the monuments at issue in *Pleasant*

---

[4] The Escambia County Defendants also cite *Bannon v. School District of Palm Beach County*, but there the Eleventh Circuit's decision about school murals was based on the fact the speech occurred "in the context of a curricular activity, and students, parents, and members of the public might reasonably believe [it] to bear the imprimatur of the school," as well as the fact that the restriction was "on the basis of content, not viewpoint." 387 F.3d 1208, 1216–17 (11th Cir. 2004).

*Grove City v. Summum*, there is no history of state editorial control over the contents of library books and no risk that members of the public would believe the diverse contents of a library convey the government's view. 555 U.S. 460, 471–72 (2009) (government "exercise[s] selectivity" over monuments, as public believes they convey government message).[5]

The State Defendants (at 5) further assert that their government speech argument "applies with even more force" in public school libraries, which "bolster student development." But school libraries bolster development by providing "a place where students may freely and voluntarily explore diverse topics," not by imposing orthodoxy. *Campbell*, 64 F.3d at 190. Nor do Defendants explain how removing *Tango* bolsters student development. Library books "are optional rather than required reading," *Pico*, 457 U.S. at 862, so there is no risk, as the State Defendants

---

[5] The State Defendants' further cases involve either an "express" statement that the government "publicly endorsed" a message, *Leake*, 14 F.4th at 1249, or unique policy concerns, *see Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674–75 (1998) ("journalistic discretion" in broadcasting); *NEA v. Finley*, 524 U.S. 569, 586 (1998) ("competitive process" for arts funding). *Forbes* also requires the government to act in a "reasonable, viewpoint-neutral" fashion," 523 U.S. at 674–76; *see also NEA*, 524 U.S. at 587 (noting that Court would face "different case" if state imposed "penalty on disfavored viewpoints"). *United States v. American Library Association* is equally unavailing, as it did not address government speech but instead held that blocking pornography in public libraries was not subject to strict scrutiny. 539 U.S. 194, 203–05 (2003). *Hurley v. Irish-American Gay, Lesbian and Bisexual Group*, 515 U.S. 557 (1995), and *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), involved compelled private speech, not government speech.

warn (at 5), of putting "policy decisions about what to teach in schools in the hands of litigants."

## IV.   The Author Plaintiffs Have Standing

The Author Plaintiffs have standing to challenge censorship of their own book. Contrary to the Escambia County Defendants' claim (at 12), the government may not deny certain speakers access that it grants others based on viewpoint, including in schools. In *Lamb's Chapel v. Central Moriches Union Free School District*, a school board violated the First Amendment when it "den[ied] a church access to school premises to exhibit for public viewing and for assertedly religious purposes, a film series." 508 U.S. 384, 387 (1993). In *PFLAG*, an organization had standing where a school district blocked its websites, because "the state violates the First Amendment right of speakers when it denies them access to even a non-public forum if the state does so based on the speakers' viewpoint." 853 F. Supp. 2d at 896 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985)); *see also Prison Legal News v. Livingston*, 683 F.3d 201, 212–13 (5th Cir. 2012) (publisher's loss "of the opportunity to communicate with certain inmates" through books in prison established standing); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) ("The denial of a particular opportunity to express one's views can give rise to a compensable injury.").

The Escambia County Defendants (at 12) cherry pick quotes from *ACLU* that

"[t]he School Board could have decided not to purchase and shelve [*Tango*] in the first place," and that book removal does "not prohibit anyone else from owning, possessing, or reading the book." 557 F.3d at 1218. But *ACLU* made these observations to explain why a book removal was not properly called a "ban." It never said authors have no right to challenge book removal. And merits arguments do not affect standing, which "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Moody v. Warden*, 887 F.3d 1281, 1285 (11th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

## V.   Student Plaintiff B.G. Has Standing

The Escambia County Defendants claim (at 14–15) that B.G. lacks standing because she has not alleged an injury in fact. On Plaintiffs' prior preliminary injunction motion against the Lake County Defendants, the Court found that Student Plaintiffs had standing where they alleged that they intended to check out *Tango* when the academic year began. ECF No. 51, at 13–14. The Escambia County Defendants concede (at 14) that B.G. has "endeavored to check out *Tango*," but ignore that allegation to paint B.G. as having only "'some day' intentions." *ACLU* found standing to challenge a book removal where a student "state[d] that he anticipated checking out [the book] 'when school resumes on August 14, 2006'—a specific intention pegged to a sufficiently fixed period of time." *ACLU*, 557 F.3d at 1194–95. Here, too, B.G. "intends to check out and read the book this semester,"

Guillory Decl. ¶ 12, and "would read *Tango* if it were available in her school library," FAC ¶ 127. Even more, she has tried to check out the book. Guillory Decl. ¶ 11.

## VI.   The Complaint Is Not a Shotgun Pleading

The Escambia County Defendants (at 4) wrongly label the complaint a shotgun pleading. But no count incorporates the allegations of preceding counts. Each count incorporates specific paragraphs of the factual allegations. FAC ¶¶ 113, 124, 136, 148. Claims are separated into distinct counts, each labeled by Plaintiff. Defendants' "own arguments" reflect no confusion about what claims they face, "reveal[ing] that [they] understand[] in detail the nature of and basis for the claims against [them]." *Parris v. 3M*, 595 F. Supp. 3d 1288, 1312 (N.D. Ga. 2022).

## VII.   Plaintiffs' Claims Against Superintendent Leonard Are Proper

The Escambia County Defendants argue that Superintendent Leonard was not superintendent when *Tango* was initially removed, but "a public … officer's successor is automatically substituted as a party" when the predecessor "ceases to hold office." Fed. R. Civ. P. 25(d). The premise (at 7–8) that Superintendent Leonard has no power to remove or restore library books is contrary to the affidavit of Lake County Superintendent Kornegay, who claims she unilaterally restored access to *Tango*. ECF No. 39-1, ¶¶ 11, 13, 17. The cited statute also provides only that the "district school board is responsible" for the content of "classroom

13

librar[ies]." Fla. Stat. § 1006.28(2)(a)(1). But the superintendent is "[r]esponsib[le] for the administration and management of the schools." *Id.* § 1001.32(3).

The Escambia County Defendants (at 8–10) are further wrong about qualified immunity. Plaintiffs' First Amendment rights are clearly established. In *ACLU*, the Eleventh Circuit left open whether *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), or *Pico*, 457 U.S. 853, provides the First Amendment standard for book removals, but the Escambia County Defendants violated both standards. Under *Pico*, removal of books from school libraries because of the ideas they contain or for narrowly partisan or political reasons violates the First Amendment. *Pico*, 457 U.S. at 870–71. Under *Hazelwood*, viewpoint discrimination is prohibited too. *Searcey v. Harris*, 888 F.2d 1314, 1324–25 (11th Cir. 1989). *ACLU* clearly establishes removing books from school libraries based on their viewpoint as unconstitutional.

## VIII.  Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

Plaintiffs' likely success on their First Amendment claims entitles them to a preliminary injunction without examining other factors. *See Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020). The Escambia County Defendants argue (at 21–23) that Plaintiffs face no irreparable harm because of purported delay, but that is irrelevant in First Amendment cases. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Christian*

*& Missionary All. Found. v. Burwell*, 2015 WL 437631, at *8 (M.D. Fla. Feb. 3, 2015) (delay "not indicative of a lack of irreparable harm" in First Amendment cases). Citing (at 22) *Wreal v. Amazon.com*, 840 F.3d 1244 (11th Cir. 2016), and *Tiber Laboratories v. Hawthorn Pharmaceuticals*, 527 F. Supp. 2d 1373 (N.D. Ga. 2007), neither of which involved the First Amendment, is unavailing. The cited *Cousins v. School Board of Orange County*, 636 F. Supp. 3d 1360 (M.D. Fla. 2022), wrongly relies on these cases, which are "not applicable in the context of an alleged First Amendment violation," *Dow Jones & Co. v. Kaye*, 90 F. Supp. 2d 1347, 1361–62 (S.D. Fla. 2000), *vacated as moot,* 256 F.3d 1251 (11th Cir. 2001).

The Escambia County Defendants contend (at 23–24) there is no irreparable harm because *Tango* is available elsewhere. But access to a book outside school libraries does not cure irreparable harm. *See Pratt v. Indep. Sch. Dist.*, 670 F.2d 771, 779 (8th Cir. 1982); *Minarcini*, 541 F.2d at 582; *PFLAG*, 853 F. Supp. 2d at 899.

## IX.   The Public Interest Favors a Preliminary Injunction

The Escambia County Defendants' arguments (at 24–25) fail, as "the public … has no interest in enforcing an unconstitutional law." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010). "[I]t is always in the public interest to protect First Amendment liberties." *Joelner v. Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

## **<u>CONCLUSION</u>**

Plaintiffs' motion for a preliminary injunction should be granted.

Dated:  New York, NY                    Respectfully submitted,
        September 22, 2023

                                        SELENDY GAY ELSBERG PLLC


                               By:      /s/ *Faith E. Gay*
                                        _____
Anna T. Neill (FBN 100945)              Faith E. Gay (FBN 129593)
William J. Blechman (FBN 379281)        Lauren J. Zimmerman*
KENNY NACHWALTER, P.A.                  Max H. Siegel*
1441 Brickell Avenue, Suite 1100        Masha Simonova*
Miami, FL 33131                         SELENDY GAY ELSBERG PLLC
Tel: 305-373-1000                       1290 Avenue of the Americas
atn@knpa.com                            New York, NY 10104
wjb@knpa.com                            Tel: 212-390-9000
                                        fgay@selendygay.com
                                        lzimmerman@selendygay.com
                                        msiegel@selendygay.com
                                        msimonova@selendygay.com

                                        *Counsel for Plaintiffs*

                                        *(application for admission *pro hac vice*
                                        forthcoming)

16