UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Peter Parnell, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> School Board of Escambia County, Florida, <br><br> Defendant. | Case No. 4:23-cv-00414-AW-MAF |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Pages**

ARGUMENT ...................................................................................................................1

I.  Plaintiffs Have Rebutted Defendant's Government Speech Defense .............1

II. The Board Engaged In Viewpoint Discrimination ..........................................3

    A.  The Board's Statements Are Clear Evidence Of Viewpoint Discrimination ...................................................................................3

    B.  Defendant Fails To Rebut Plaintiffs' Other Evidence Of Viewpoint Discrimination ...................................................................6

    C.  Defendant Fails To Dispute That *Tango*'s Removal Was Not Reasonably Related To A Legitimate Pedagogical Purpose ................8

III. Defendant's Procedural Complaints Are Baseless ..........................................9

    A.  Defendant's Effort To "Dispute" Facts Without Providing Evidence Is Frivolous ..........................................................................9

    B.  Defendant's Purported Evidentiary Objections Are Baseless ............12

CONCLUSION ..............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amerisure Ins. Co. v. Old Dominion Ins. Co.*,
    2018 WL 11413306 (N.D. Fla. 2018)...................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................2

*Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc.*,
    786 F. App'x 195 (11th Cir. 2019)......................................................................10

*Floridians Protecting Freedom Inc. v. Ladapo*,
    2024 WL 4518291 (N.D. Fla. Oct. 17, 2024).......................................................4

*Gerlich v. Leath*,
    861 F.3d 697 (8th Cir. 2017) ................................................................................4

*Gillman ex rel. Gillman v. Sch. Bd. for Holmes Cnty., Fla.*,
    567 F. Supp. 2d 1359 (N.D. Fla. 2008) ................................................................5

*Jefferson v. Sewon Am., Inc.*,
    891 F.3d 911 (11th Cir. 2018) .............................................................................10

*Moms for Liberty - Brevard Cnty. v. Brevard Pub. Sch.*,
    118 F.4th 1324 (11th Cir. 2024) ...........................................................................9

*Moore v. GEICO Gen. Ins. Co.*,
    633 F. App'x 924 (11th Cir. 2016) .....................................................................11

*Nussbaumer v. Harris*,
    2024 WL 4004979 (N.D. Fla. Jan. 19, 2024) .......................................................1

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
    117 F.4th 628 (5th Cir. 2024) ...............................................................................2

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*,
    653 F.3d 290 (3d Cir. 2011) ............................................................................4, 5

*Pro-Built Dev. LLC, v. Delta Oil Servs. Inc*,
  2024 WL 5056625 (N.D. Ala. Dec. 10, 2024) ...................................................... 11

*SEC v. Watkins*,
  317 F. Supp. 3d 1244 (N.D. Ga. 2018),
  *aff'd*, 810 F. App'x 823 (11th Cir. 2020) .......................................................... 10

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) .............................................................................................. 3

*United States v. Kachkar*,
  2022 WL 2704358 (11th Cir. July 12, 2022) ...................................................... 13

*Waddell v. Valley Forge Dental Assocs., Inc.*,
  276 F.3d 1275 (11th Cir. 2001) .......................................................................... 10

*Young v. City of Palm Bay*,
  358 F.3d 859 (11th Cir. 2004) ............................................................................ 10

**Statutes and Rules**

Fed. R. Civ. P. 56 ..................................................................................................... 12

Fed. R. Evid. 401 ..................................................................................................... 14

Fed. R. Evid. 801 ..................................................................................................... 13

Fed. R. Evid. 803 ..................................................................................................... 13

Fla. Stat. § 119.01 .................................................................................................... 13

Local Rule 56.1 ......................................................................................................... 1

Pursuant to Local Rule 56.1(D), Plaintiffs respectfully submit this reply in response to the Board's Opposition to Plaintiffs' Motion for Summary Judgment, ECF 225 (the "Opposition" or "Opp."), and in further support of Plaintiffs' Motion for Summary Judgment, ECF 221 (the "Motion" or "Mot.").[1]

## ARGUMENT

Defendant's removal of *Tango* was based solely on impermissible viewpoint discrimination. In its Opposition, Defendant misconstrues applicable law, ignores or mischaracterizes the record, and "disputes" facts without providing countervailing evidence. Because Defendant does not raise a genuine dispute of material fact as to the Board's stated reasons for removing *Tango*, Plaintiffs are entitled to summary judgment.

**I.   Plaintiffs Have Rebutted Defendant's Government Speech Defense**

Defendant argues that Plaintiffs' Motion should be denied "because Plaintiffs fail to address the government speech doctrine in their Motion." Opp. at 6. But Plaintiffs did address it (at 35). Defendant's argument that Plaintiffs' response constituted waiver fails as a matter of law.

Government speech is an affirmative defense, and thus it is Defendant's burden to show that the doctrine applies. *See Nussbaumer v. Harris*, 2024 WL 4004979,

---

[1] Capitalized terms not defined herein have the meaning given to them in Plaintiffs' Motion.

at *2 (N.D. Fla. Jan. 19, 2024) ("Defendant raises an affirmative defense—that the speech in question is actually government speech immunized from any First Amendment inquiry."). For issues on which the nonmoving party bears the burden of proof, a moving party meets its burden on summary judgment by pointing to "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Plaintiffs did just that. Mot. at 35; *see also Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 643 (5th Cir. 2024) ("[T]he plaintiff is not obligated to negate each element of an affirmative defense to succeed at the summary judgment stage.").

Defendant's citation (at 6) to *Amerisure Ins. Co. v. Old Dominion Ins. Co.*, 2018 WL 11413306 (N.D. Fla. 2018) is inapposite. There, only the plaintiff moved affirmatively for summary judgment and failed to address the defendant's affirmative defenses "in both its motion and reply." *Id.* at *1. The court concluded "that because the party moving for summary judgment never cited to or discussed the opposing party's affirmative defenses, its motion had to be denied." *Id*. at *2 (cleaned up). Here, Plaintiffs have addressed government speech in their Motion; in their opposition to Defendant's motion for summary judgment, ECF 227 at 7–22; and in this reply, *infra* at 3. Defendant cannot argue that it has not had a fair opportunity to respond.

Defendant's procedural objections cannot mask the inapplicability of the government speech doctrine to school libraries. *See* ECF 227 at 7–10. And even if it could apply, the Board has failed to present evidence establishing that the selection and/or removal of library materials constitutes government speech under the fact-intensive "history, endorsement, and control" test. *See Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). Plaintiffs, on the other hand, have elicited undisputed evidence that (i) public school libraries, generally and in the District, do not traditionally communicate a government message, (ii) no reasonable observer would associate the selection of multitudes of different books with government endorsement, and (iii) Defendant does not control the messages conveyed by books on school library shelves. *See* ECF 227 at 17–28.

## II. The Board Engaged In Viewpoint Discrimination

The record is clear: The Board removed *Tango* because it disagreed with the book's viewpoint, violating the First Amendment.

### A. The Board's Statements Are Clear Evidence Of Viewpoint Discrimination

Defendant insists (at 8) that the Removal Board Members' statements from the February 2023 Meeting[2] do not show that they removed *Tango* for viewpoint-

---

[2] Defendant disputes that it admitted that the Board's February 2023 Meeting statements constitute the sole evidence of their motives for removing *Tango*. Opp. at 12 n.2. The record shows otherwise. *See* ECF 111 at 5–6 ("To the extent any

3

discriminatory reasons because "none of these members expressly stated that they were voting to restrict *Tango* based on their disagreement with the views of the authors." Defendant cites no authority to suggest that viewpoint discrimination can be shown only through direct admission. Nor could it. "The government rarely flatly admits it is engaging in viewpoint discrimination." *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 297 (3d Cir. 2011) (internal citations omitted). And courts routinely find decisionmaker statements to be evidence of viewpoint discrimination without such highly unusual candor. *See, e.g.*, *Floridians Protecting Freedom Inc. v. Ladapo*, 2024 WL 4518291 (N.D. Fla. Oct. 17, 2024) (finding defendant's justification for restricting the speech at issue was in response to speaker's viewpoint where defendant did not explicitly state its disagreement); *Gerlich v. Leath*, 861 F.3d 697, 706 (8th Cir. 2017) (noting that defendants' statement about controversy that could result from the speech at issue shows their decision was "motivated by viewpoint discrimination").

Defendant argues that Fetsko's statements[3] do not evidence viewpoint discrimination because his "comments focused on the fact that the book introduced

---

impermissible discriminatory animus exists by the Board, which the Escambia Defendants expressly deny, Plaintiffs must find it in the Board's open and public debate."). *See also* ECF 140 at 19:1–20:23.

[3] Notably, Defendant only addresses Plaintiffs' arguments regarding Fetsko's discriminatory motives. Opp at 8 n.1. Defendant's decision to not address the

concepts of reproduction" that he believed inappropriate. Opp. at 8. That characterization is divorced from reality: Fetsko stated that he was voting to remove *Tango* because it showed "two male penguins" that "were in love, that were embracing each other." ECF 220-4 at 87:21-24. *Tango* does not convey any "concepts of reproduction," nor did Fetsko or anyone else reference such "concepts" until summary judgment. *See Pittsburgh League*, 653 F.3d at 296 (rejecting proffered viewpoint-neutral justification "[b]ecause [defendant] did not mention this basis until after the lawsuit had been filed"). Fetsko's statement that *Tango* contains "innuendo of sexualizing," ECF 220-4 at 87:19, is also false: At no point do the penguins engage in any sexual activity, and Defendant admitted that *Tango* contains no sexual content, ECF 220-27 (Def.'s RFA Responses 43–45).

At least one court in this district, in finding speech to be improperly restricted based on viewpoint discrimination, dismissed a similar attempt to improperly sexualize speech that was obviously not sexual—"I Support My Gay Friends"; "I Support Gays"—where "the School Board conceded in its answers to interrogatories and at trial that the messages and symbols at issue are not … sexually suggestive." *Gillman ex rel. Gillman v. Sch. Bd. for Holmes Cnty., Fla.*, 567 F. Supp. 2d 1359, 1375–77

---

remaining Removal Board Members' statements, despite being over 5,000 words under the word limit, is a tacit admission that those statements reflect discriminatory motive. *See* Mot. at 36–39.

(N.D. Fla. 2008) (finding that speech was "banned" "because of … personal disagreement with its message"). The Court should do the same here.

Defendant's omissions and mischaracterizations cannot overcome the plainly discriminatory meaning of Fetsko's statements. His statements echo the discriminatory ones Baggett shared with him: that children should not have access to books that promote LGBTQ+ "equality, dignity and worth." ECF 220-2 at 143. And Fetsko's affirmative response to Baggett sharing this information is far from "anodyne," Opp. at 9, as it endorses book removal based on anti-LGBTQ+ animus. *See* ECF 220-2 at 142.

### B.  Defendant Fails To Rebut Plaintiffs' Other Evidence Of Viewpoint Discrimination

Defendant's attempts to rebut Plaintiffs' additional evidence of the Board's discriminatory motives are unconvincing. *First*, Defendant asserts that because the Board voted to remove from elementary school libraries all ten books brought before it on appeal, no conclusions can be drawn about the Board's motives by comparing *Tango* with books depicting heterosexual couples that remain in District elementary school libraries. Opp. at 9. However, Defendant's decision to remove all books it reviewed says nothing about the propriety of its decision to remove *Tango*. And Defendant's attempt to distance itself from the selection of books in District libraries by stating that the Board does not "ratif[y]" the media specialist's selection of books or otherwise know the "books present in the library," Opp. at 9–10, confirms the

6

inapplicability of the government speech doctrine, as the Board admits it is not responsible for library material selection. *See supra* at 1–3. Moreover, Defendant's inability to provide an explanation for its decision to remove a book about an LGBTQ+ family while allowing similar books about heterosexual families confirms its discriminatory intent.

*Second*, Defendant argues that the Board has not evidenced a pattern of viewpoint discrimination because Plaintiffs do not "show that when faced with a challenge to a similar book with reproductive themes, but with heterosexual couples, the Board acted differently." Opp. at 11. Again, this is not credible because *Tango* contains no "reproductive themes." Even if *Tango* did contain such material, the Board's purported concern with "reproductive themes" cannot be reconciled with the undisputed fact that several books containing such themes remain in District libraries, ECF 226-2 at 5–7, which also refutes Defendant's assertion that every book in District libraries conveys a government message of suitability, ECF 216 at 7. Defendant's internally conflicting arguments establish the post-hoc, pretextual nature of the Board's government speech argument and confirm the Board's viewpoint-discriminatory motive in removing *Tango*.

Nor can the Board rely on its decision to remove *Drama* from elementary school libraries while allowing it to remain in middle and high school libraries as evidence of its proper motives. Opp. at 11. Like *Tango*, *Drama* does not contain

7

any "reproductive issues" and was challenged by Baggett solely on the basis that it contained LGBTQ+ characters, again evincing Defendant's anti-LGBTQ+ animus.

*Finally*, Defendant asks the Court to ignore the Board's decision to disregard the conclusions reached by 8 of 11 LACs and, ultimately, the Committee, arguing that "[a] discriminatory motive cannot be imputed every time there is a disagreement with a professional review." Opp. at 12. This is not Plaintiffs' argument. The Board's decision to overrule its own committees is evidence that its decision was not consistent with generally applicable selection and de-selection policy or practice, which supports Plaintiffs' argument of discriminatory intent. Pursuant to the Media Policy, the Committee—made up of "community members, school administrators, teachers, parents … and media specialists"—is tasked with evaluating whether a challenged book should remain in District libraries. *See* ECF 220-3 at 12. The Committee unanimously denied Baggett's challenge, concluding that *Tango* was appropriate for District elementary students. The Board then rejected that reasoned conclusion based on discriminatory animus.

### C. Defendant Fails To Dispute That *Tango*'s Removal Was Not Reasonably Related To A Legitimate Pedagogical Purpose

Defendant argues *for the first time* that, under the Media Policy, the "Board was not required to state its rationale for the vote on the record." Opp. at 13. But, in this case, they *did*, as the record unequivocally demonstrates. Mot. at 35–36. Regardless, Plaintiffs' claims are not premised on a violation of the Media Policy.

8

Defendant further claims that there is "no evidence presented by Plaintiffs that the Board voted on challenged books in an arbitrary or haphazard way," and "[i]f anything, the Board's history indicates a consistent practice of finding books unsuitable for certain ages based on what it viewed as mature themes," Opp. at 13, which the Board now claims to be "reproductive themes" in *Tango*, *id*. at 11. But *Tango* is a book about *adoption*, not reproduction. And the Board has allowed books with almost identical content to *Tango* but depicting heterosexual families to remain. ECF 227 at 28; *see also Moms for Liberty - Brevard Cnty. v. Brevard Pub. Sch.*, 118 F.4th 1324, 1333 (11th Cir. 2024) (To be considered reasonable, "[t]he government … must avoid enforcement that is 'haphazard and arbitrary.'" (quotation omitted)).

### III. Defendant's Procedural Complaints Are Baseless

Defendant attempts to avoid summary judgment by (1) listing fourteen facts it "disputes" without providing any basis in the record or explaining why such facts are material, and (2) asserting that certain of Plaintiffs' evidence is inadmissible. These efforts fail to establish a genuine dispute of any material fact.

### A. Defendant's Effort To "Dispute" Facts Without Providing Evidence Is Frivolous

Defendant's fourteen objections (at 2–4) to Plaintiffs' factual assertions fail to create any genuine dispute of material fact. "There is a genuine issue of material fact if the nonmoving party has *produced evidence* such that a reasonable factfinder

9

could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (emphasis added). The nonmovant must provide more than a "scintilla of evidence … to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004). "[M]ere denials, lacking any supporting evidence, will not be enough." *Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc.*, 786 F. App'x 195, 198 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(c)(1)(A)).

*First*, Defendant "disputes" several statements of fact without providing any evidence for these purported disputes. Opp. at 3 (¶¶ 4–5, 8–9). Accordingly, Plaintiffs' statements must be deemed undisputed. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).

*Second*, Defendant "disputes" certain facts by claiming that the documents supporting these facts "speak for themselves." *Id.* at 3–4 (¶¶ 6, 13–14). Merely stating that a "document 'speaks for itself' … do[es] not actually dispute any of the facts being asserted, nor do[es] [it] show 'that the materials cited do not establish' the facts asserted." *SEC v. Watkins*, 317 F. Supp. 3d 1244, 1251 n.2 (N.D. Ga. 2018), *aff'd*, 810 F. App'x 823 (11th Cir. 2020) (citations omitted). Again, Plaintiffs' facts must be deemed undisputed.

*Third*, Defendant purports to "dispute" facts regarding the purpose of school libraries and the training of school librarians on the basis that "opinions of Plaintiffs'

expert are not facts." Opp. at 2, 4 (¶¶ 1, 11–12).  The Eleventh Circuit has rejected the argument that "because the expert provided nothing more than opinions," expert testimony does not bear on the "genuine dispute of material fact" inquiry.  *Moore v. GEICO Gen. Ins. Co.*, 633 F. App'x 924, 931 (11th Cir. 2016) (cleaned up).  Accordingly, "because [Defendant] has not pointed to any admissible evidence to rebut [Dr. Dawkins's] expert opinion[s], there is no genuine dispute" as to the facts premised on her expert opinions.  *Pro-Built Dev. LLC, v. Delta Oil Servs. Inc*, 2024 WL 5056625, at *9 (N.D. Ala. Dec. 10, 2024).[4]

*Fourth*, despite Defendant's observation that the Media Policy in effect at the time of *Tango*'s removal post-dates *Tango*'s original selection, Opp. at 2 (¶ 2), the record shows that *Tango* was selected because it was determined to have pedagogical value and to be suitable for elementary school children.  Plaintiffs supported this fact with the testimony of former Media Services Coordinator Michelle White, who explained that Media Specialists are required to assess Professional Reviews, student interest, "age[-]appropriate[ness]," student comprehension, and "whether a book has pedagogical value." ECF 220-5 at 55:14–57:17.  This unrebutted evidence from the District's former employee establishes the criteria by which *Tango* was selected.

---

[4] Defendant oddly takes issue with Dr. Dawkins's statement that Professional Reviews describe *Tango* as "essential for most libraries and exceptional in its format or genre," Opp. at 2–3 (¶ 3), but the record confirms this statement, *see* ECF 220-2 at 182–84; ECF 220-1 ¶¶ 32, 35.

*Fifth*, Defendant disputes that the Board knew about Baggett's anti-LGBTQ+ animus and that it never "indicated [] disagreement or disapproval" with her anti-LGBTQ+ comments. Opp. at 3–4 (¶¶ 7, 10). But the Removal Board Members' knowledge of Baggett's animus is supported by multiple emails, *see* Mot. at 15–18 (citing ECF 220-2 at 137–39, 142; ECF 220-15 at 5–6; ECF 220-14–17), the earliest of which is from August 5, 2022—prior to the vote on *Tango*, *see* ECF 220-2 at 137–39. And Defendant provides no evidence that the Removal Board Members *did* express disagreement with Baggett's homophobic rhetoric or otherwise cast doubt on Plaintiffs' interpretation of their communications. *Cf.* Opp. at 3 (¶ 6). Plaintiffs also cite deposition testimony from District Superintendent Keith Leonard, who testified that the Board would have been made aware of the investigation into Baggett's "anti-LGBTQ … speech." Mot. at 15–16 (citing ECF 220-6 at 125:4-6, 177:13-20; ECF 220-11). Defendant fails to acknowledge much less rebut this evidence.

### B. Defendant's Purported Evidentiary Objections Are Baseless

Defendant's objections (at 5) to certain of Plaintiffs' cited evidence should be rejected because the challenged evidence can "be presented in a form that would be admissible." Fed. R. Civ. P. 56(c)(2).

*First*, Dr. Dawkins's expert opinions are admissible for the reasons stated in Plaintiffs' Opposition to Defendant's *Daubert* Motion, ECF 223.

*Second*, the challenged communications on which Plaintiffs rely in their Motion are not inadmissible hearsay.[5] The Board Members' statements, ECF 220-14–19, ECF 220-21, ECF 220-23, are not hearsay because they are statements of a party opponent: They are offered against Defendant, the Board Members are Defendant's "agent[s] or employee[s]" authorized to make such statements, and their communications with constituents and District employees about book challenges are "within the scope of that relationship." Fed. R. Evid. 801(d)(2)(C)–(D).

In addition, emails involving District employees concerning book challenges and related procedures, as well as complaints about District employee Baggett, ECF 220-2 (Exs. 8, 9, 13, 14, 15, 16, 17), ECF 220-9–11, ECF 220-21–22, fall into the hearsay exception for records of a regularly conducted activity. *See* Fed. R. Evid. 803(6). The Eleventh Circuit has observed that "emails [that] were kept for future, business-related reference" during "regular business activity" meet the requirements of Rule 803(6). *United States v. Kachkar*, 2022 WL 2704358, at *7 (11th Cir. July 12, 2022). The cited correspondence relates to District business and is properly (and automatically) maintained in the course of the District's ordinary business. Fla. Stat. § 119.01(1), (2); ECF 220-9 at 2; *cf.* Fed. R. Evid. 803(6)(A)–(C).

---

[5] Plaintiffs do not rely on Exhibits 1 and 10 in ECF 220-2.

13

*Third*, despite Defendant's contentions, Opp. at 5, Plaintiffs' evidence establishing the Board's awareness of Baggett's homophobia is relevant. The Removal Board Members were aware that Baggett had a documented history of homophobia, Mot. at 8–11, and challenged books solely because of their LGBTQ+ viewpoints, ECF 220-2 at 111, 137–139. Those Board Members agreed with that approach and welcomed further challenges, ECF 220-2 at 139; ECF 220-21 at 2; sought Baggett's "feedback" on how to revise the Media Policy, ECF 220-2 at 141; and then chose to overrule its own Committee's decision to ratify Baggett's challenge to *Tango*. This shows that the Board and Baggett shared a desire to remove pro-LGBTQ+ books. The Board's "close alignment" with Baggett, Mot. at 39, "tend[s] to make … more … probable" that they voted to remove *Tango* based on her documented animus, a fact "of consequence in determining th[is] action." Fed. R. Evid. 401.

## CONCLUSION

For the foregoing reasons, and those outlined in Plaintiffs' Motion, Plaintiffs are entitled to summary judgment.

## WORD COUNT CERTIFICATION

This Memorandum complies with the word limitation set forth in Local Rule 56.1(D) because this Memorandum contains 3,191 words, excluding the parts exempted by Local Rule 7.1(F).

Dated: New York, NY
December 20, 2024

Respectfully submitted,

SELENDY GAY PLLC

By: /s/      *Faith E. Gay*
Faith E. Gay (FBN 129593)
Lauren J. Zimmerman*
Masha Simonova*
Alexandra G. Butler*
Ashley Ulrich*
Bradley Posdal*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
lzimmerman@selendygay.com
msimonova@selendygay.com
abutler@selendygay.com
aulrich@selendygay.com
bposdal@selendygay.com

Anna T. Neill (FBN 100945)
William J. Blechman (FBN 379281)
SPERLING KENNY NACHWALTER, PA
1441 Brickell Avenue, Suite 1100
Miami, Fl 33131
Tel: 305-373-1000
aneill@sperlingkenny.com
wblechman@sperlingkenny.com

*(admitted *pro hac vice*)

*Counsel for Plaintiffs*

15